[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT
This is an action under § 49-51 of the General Statutes to determine whether a lien filed against property of the plaintiff's decedent pursuant to § 17-82c of the General Statutes for public assistance and medical benefits is invalid, and to discharge the lien. A related claim for damages under §§ 49-8 and 49-51, and the first count of the complaint, a quiet title action, have been withdrawn by the plaintiff. The defendant has raised two special defenses with the plaintiff's attempt to discharge the lien: (1) the State is entitled to full reimbursement of all payments made to the plaintiff's decedent before it can be compelled to release the statutory lien under § 17-82c; and (2) the Bridgeport Probate Court exceeded its limited statutory jurisdiction by deciding the amount of the State's claim and ordering a release of the lien upon CT Page 7704 payment of less than the full amount of the State's claim. Both the plaintiff and the defendant have filed motions for summary judgment, claiming that there are no material disputed facts, and that they are entitled to judgment as a matter of law.
The parties have entered into a stipulation of facts which forms the underlying factual basis for both motions. The relevant facts are as follows. Joan Corcoran Adamkowski died on October 22, 1989, and her will was admitted to probate in the Bridgeport Probate Court. The plaintiff, Anna Corcoran, is both the executrix and the sole beneficiary of the estate of Joan Corcoran Adamkowski. The will contains the standard clause directing the executrix to pay the decedent's debts (except those secured by mortgage on real estate) out of the residuary estate. There was no specific devise of the property at 129 Minturn Road in Bridgeport, and it passed to the plaintiff under the residuary clause of the estate which covered both real and personal property of the decedent. The decedent had acquired title to the subject property by warranty deed dated June 9, 1984, recorded in the Bridgeport Land Records. On June 29, 1987, the Department of Income Maintenance of the State of Connecticut, now known as the Department of Social Services (hereafter referred to as DSS) recorded a lien on the real property pursuant to §§ 17-82c and 17-83e of the General Statutes for all public assistance payments made to Joan Adamkowski prior to and subsequent to the recording of the lien.[1] On or about January 4, 1990, the plaintiff's attorney notified the Department of Administrative Services, Bureau of Collection Services of the State of Connecticut of the decedent's death and that it had 90 days from that date to file a claim for reimbursement from the decedent's estate. On or about March 8, 1990, the Bureau of Collection Services (BCS) filed a claim against the estate in the amount of $29,791.66, stating that this was the amount due the State for payments made to the decedent under the provisions of Chapter 302 of the General Statutes. The 90 day claim period expired about April 4, 1990. On or about August 6, 1990, the Department of Income Maintenance claimed, by letter to the plaintiff's attorney, that its statutory lien amounted to $56,093.69. The additional amount claimed was for medical benefits paid to the decedent after she reached 65 years of age until her death. After receipt of that letter, the plaintiff's attorney filed a petition for determination of claim with the Bridgeport Probate Court on or about August 9, 1990. The Probate Court held a public hearing on October 23, 1990. No one from the Department of Administrative Services appeared to defend the claim. The Probate Court determined that there was no authority for the increased claim after the 90 day claims period CT Page 7705 had expired, and that the amount of the claim presented within the time period was $29,791.66, which was to be paid by the fiduciary to the State of Connecticut. The court order also stated that upon tender of that amount to the Department of Administrative Services, which was to be accepted as full payment, the Department was directed to provide a release of the lien. The order of the Probate Court of October 30, 1990 was not appealed by the State. The plaintiff's attorney sent a cashiers check of $29,791.66 to the BCS on December 12, 1990 together with a copy of the Probate Court order. The BCS negotiated the check and advised the Probate Court on December 17, 1990 that the claim had been fully paid. The defendant later refused to provide a release of the lien despite two written demands for a release by the plaintiff's attorney.
In addition to these undisputed facts, the defendant has submitted an affidavit and documentation to support a claim that the amount paid by the State to the decedent was $56,093.69, and that the difference from the amount of the claim presented was $26,570.69 in medical benefits paid to the decedent. An affidavit from an investigator at the Department of Income Maintenance dated October 20, 1993 contains other facts which have not been agreed to by the plaintiff. This affidavit indicates that DSS was not contacted by the BCS as to the amount of the lien, its release, or the amount of public assistance reimbursable to the State prior to August 6, 1990. On that date DSS was again contacted by the estate's attorney, prompting the letter claiming $56,560.69. Around November 2, 1990 DSS received from BCS a copy of the Probate Court petition for the determination of the claim dated August 9, 1990. DSS was not aware of the petition or the hearing on it prior to November 2, 1990. DSS became aware of the $29,791.66 payment to BCS when contacted by it on February 7, 1991.
Summary judgment maybe granted under § 384 of the Connecticut Practice Book if the pleadings and documents submitted with the motion show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connelly v. Housing Authority, 213 Conn. 354, 364. A material fact has been defined as a fact that will make a difference in the result in the case. Hammer v. Lumberman's MutualCasualty Co., 214 Conn. 573, 578; Booth v. Flanagan, 23 Conn. App. 579,584. Legal conclusions and opinions, such as the statement that the lien continues as a security interest on the real estate and that an additional $26,570.69 is still owing to the State of Connecticut, must be disregarded. Farrell v. Farrell, 182 Conn. 34,37. CT Page 7706
The admissible facts in the affidavit, if accepted as true, amount to a claim that DSS was ignorant of the actions taken by BCS, part of the Department of Administrative Services, until after the amount of the claim was presented to and decided by the Probate Court. In determining whether there is a material issue of fact preventing summary judgment, the evidence is considered in the light most favorable to the non-moving party. Connell v. Colwell,214 Conn. 242, 246, 247. The State's factual defense to the plaintiff's motion for summary judgment amounts to a claim that the left hand did not know what the right hand was doing. Since, for reasons discussed below, the plaintiff followed the proper statutory scheme, this lack of communication among the state agencies becomes an immaterial fact in the outcome of this action. Where there is no genuine issue as to any material fact, the next question is whether the moving party is entitled to judgment as a matter of law. Bartha v. Waterbury House Wrecking Co., 190 Conn. 8,11. That is resolved by applying to the established facts the same test as is used in determining whether a party would be entitled to a directed verdict on the same facts. Connelly v.Housing Authority, supra, 364.
The presentation of claims against a solvent estate is governed by § 45a-355 of the General Statutes. That statute requires an application for admission of a decedent's will to probate to state whether the decedent received any assistance from the State, and if so, the probate court sends a copy to the Department of Administrative Services. It is not disputed that occurred with this estate. The statute further provides that if the Department of Administrative Services "fails to present its claim to the fiduciary within 90 days from the date of mailing of such notification or the date of the appointment of the fiduciary, whichever is later, the Department of Administrative Services . . . shall be forever barred from asserting or recovering on such claim from the fiduciary, the estate of the decedent or any creditor or beneficiary of the state." An earlier version of this statute was discussed in State v. Goldfarb, 160 Conn. 320, 324-326, which held that a non-claim statute, requiring a creditor to present a claim against an estate within a statutory time limit, applied to the state, and that failure to present the claim pursuant to the statute barred it. See also Sherwood v.Bridgeport, 123 Conn. 348, 353, holding that the non-claim statute barred a late claim by a municipality. "The purpose of the statute is to enable the administrator to perform his duties by assuring the he is informed as to what claims there are which must be paid CT Page 7707 out of the estate and allowing him the opportunity to pass on them. . . . Its meaning is that if a creditor fails to present his claim within the time limit, and no extension of time is granted, that omission is an effectual bar to any further demand against the estate. . . . Thus, the statute imposes a condition precedent to the enforcement of a right of action, the nonfulfillment of which extinguishes the right of action, in contrast to a statute of limitation which merely bars the remedy and is to be pleaded as a special defense." State v. Goldfarb, supra, 325 (citations omitted).
The statute requires notice to be given to the Department of Administrative Services, not DSS or any other state agency. The executrix gave proper notice, and the only claim presented then was for $29,791.66. That amount and the additional sum claimed by DSS after the 90 day claims period had expired were both debts of the decedent. Under the terms of the will all of the claims of the State were debts of the decedent which were to be paid from the residue of the estate. There is no provision in the statute for a creditor to submit an amended claim, increasing its amount after the claims period has expired. That would defeat the entire purpose of the statute.
The defendant argues that since this is an action to force the release of the State's statutory lien that presentation of the claim was not required, relying upon Beard's Appeal, 78 Conn. 481,483. In that case, a bank which had a mortgage on the decedent's property failed to present a claim against the estate within the time limit for creditors to present their claims. It was held that this was unnecessary, as the probate court records indicated that the decedent's property was subject to the mortgage which had to be paid from the general personal estate whether or not it was presented as a claim against the estate. Connecticut is a title jurisdiction of mortgages, where the mortgagee has legal title to the real estate subject to the mortgagor's right of redemption. See Conference Center Ltd. v. TRC, 189 Conn. 212, 218. A mortgage has a different status from the statutory lien allowed by § 17-82c of the General Statutes, and the State acquired no title to the property merely by filing the lien. Discussing Beard's Appeal,Padula v. Padula, 138 Conn. 102, 106, 107 stated that a mortgagee does not have to present a claim to the administrator of the estate of his mortgagor in order to enforce his interest in the mortgaged property, but the right to recover on the mortgage note would be barred unless a claim has been presented. The word "claims" as used in the statute means any obligation which can be considered CT Page 7708 debts of the decedent. Padula v. Padula, supra, 106; Sherwood v.Bridgeport, supra, 351. Claims for services rendered are also considered debts. Grant v. Grant, 63 Conn. 530, 545. A claim upon a specific asset of the decedent, such as the property secured by the mortgage in Beard's Appeal, supra, does not require a claim against the decedent's estate. State v. Goldfarb, supra, makes it clear that charges of the State for services rendered to the decedent prior to death must be presented as a claim against the estate. As stated in Padula v. Padula, supra, 107;
 "The distinction between these two lines of cases is clear. Those cases cited above and others in our reports which hold that the presentation of a claim is essential involve claims which are the personal obligation of the decedent. In those cases in which the cause of action is for the recovery of or the determination of interests in specific property and therefor is at least quasi in rem and in personam, it is not an essential prerequisite that a claim be presented. In other words the purpose of the statute of nonclaim is to make sure that an administrator is informed as to what claims there are which must be paid out of the estate as a whole. It is not to apprise him of what the apparent property of his decedent is to be inventoried or what encumbrances, if any, are on that property."
The decedent's will directs the executrix to pay all of the decedent's debts, except those secured by a mortgage on real property. Since an authorized state agency submitted a claim for only $29,791.66, the late claim for additional $56,093.69 is barred by the clear statutory language of § 45a-355 of the General Statutes.
The defendant contends that the probate court had no authority to order the lien released upon payment of the amount of the claim initially presented. While a probate court has no power to make a final determination of title where title is disputed, it can make such incidental determinations of questions of title as are necessary to enable it to carry out its statutory duties. HartfordNational Bank Trust Co. v. Willard, 175 Conn. 372, 379. Also, where title is not in dispute, a probate court clearly has CT Page 7709 jurisdiction to order distribution or conveyance of property, and the probate decree will be binding on anyone who does not have a direct claim to title. Id., 380. Section 45a-98 of the General Statutes allows probate courts to make any lawful orders or decrees to carry into effect the power and jurisdiction conferred upon the Probate Court by statute.
Even if the Probate Court's jurisdiction does not go so far as to allow it to order the State to release the statutory lien on the decedent's property, the Probate Court clearly had authority to determine the amount of the claim. It also had authority to allow the executrix to pay the amount of the claim that was property presented to the executrix, and to deny any claim not presented as provided by statute. The State never appealed the order of the Probate Court allowing only $29,791.66. Since the Probate Court had jurisdiction to determine the amount of the claim, that order became a final judgment when the State failed to take an appeal. The decree is not subject to collateral attack at this time. See § 45a-24 C.G.S. The defendant does not contend that the State had no notice of the hearing or that there was any fraud on the part of the plaintiff. The judgment of the Probate Court established the amount of the claim at $29,791.66, although the failure of the defendant to submit the higher claim within the statutory time limit in § 45a-355 also barred it under the terms of that statute. Even if the Probate Court had no jurisdiction to order release of the lien, the Superior Court, acting within its legal and equitable powers can order the discharge of an invalid lien. Under § 49-51 of the General Statutes any person having an interest in real property which is encumbered by a lien which the lienor refuses to release may apply to that court for a judgment whether the lien is valid.
It is undisputed that the State has been paid the amount determined to be the debt by the Probate Court, namely $29,791.66. By the negotiation of the check by an agency of the State, the debt has been fully paid. There is no genuine issue as to any material fact in this case. Whether the lien must be released under the circumstances is a question of law. Under § 17-82c of the General Statutes, the Commissioner of Income Maintenance can place a lien against property of a person receiving assistance "to secure the claim of the State for all amounts which it has paid or may thereafter pay to him or in his behalf under the provisions of" Chapter 302. It is undisputed that the lien was filed as provided in § 17-82c. That statute also states that the "lien shall be released by the Commissioner upon payment of the amount by its secured." CT Page 7710
The amount secured was reduced to $29,791.66 as a result of the proceedings on the estate in the Probate Court and § 45a-355 of the General Statutes. A lien is a legal claim or charge on property as security for the payment of some debt or obligation.Interstate Fur Manufacturing Co. v. Redevelopment Agency, 154 Conn. 600,604; 53 C.J.S. 455, Liens, § 2; 51 Am.Jur.2d 142, Liens, § 1. "A statutory lien is incident to and security for the underlying debt, and there can be no lien in the absence of an underlying debt." 51 Am.Jur.2d 175, Liens § 36. Payment of the debt extinguishes the lien which is based upon the debt. 51 Am.Jur.2d 185, Liens § 49; 53 C.J.S. 484, Liens § 26. It has been recognized that the State's lien under § 17-82c is not perfected and amounts to an inchoate lien prior to foreclosure proceedings under the statute. Danbury Savings Loan Association v. Delaney, 207 Conn. 743,754. The lien exists only as security for the debt.Connecticut Company v. New York, New Haven and Hartford RailroadCompany, 94 Conn. 13, 31. The lien cannot continue after the debt has been paid. The additional amount was lost when the claim was not properly presented against the estate in accordance with § 45a-355
of the General Statutes. Payment of the amount owed by the administrator of the estate satisfied the debt, and a proper and sufficient tender of payment operates to discharge the lien. 53 C.J.S. 485, Liens, § 26; 51 Am.Jur.2d 179, 185, Liens, §§ 40, 49. A lienholder has the duty to prepare, execute and deliver to the debtor a release of the lien on tender of the amount due. 53 C.J.S. 485, Liens § 28. Under § 17-82c the commissioner was required to release the lien. Since the defendant State is no longer entitled to a lien and the lien must be released as a matter of law, the plaintiff is entitled to summary judgment. The lien is ordered discharged under § 49-51 of the General Statutes.
The plaintiff's motion for summary judgment is granted. The defendant's motion for summary judgment is denied.
ROBERT A. FULLER, JUDGE